# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JUAN GUEVARA,**
*individually and on behalf of a class of similarly situated persons,*

     *Plaintiff,*

     v.

**STANLEY CHAO** *and* **ARB RISK MANAGEMENT HOLDINGS LLC,** *d/b/a* **APEX PROCESSING, VALLEY PROCESSING, AND COMET LOANS,**

     *Defendants.*

Case No.:

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, **Juan Guevara** ("**Mr. Guevara**"), on behalf of himself and all similarly situated individuals, by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Stanley Chao** ("**Chao**"), and **ARB Risk Management Holdings, LLC ("ARB"),** doing business as **Apex Servicing, Valley Processing,** and **Comet Loans** (collectively, the "**Defendants**"), stating as follows:

## DESCRIPTION OF THE CASE

1.     This is an action against the Defendants for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. § 1961, *et seq.* ("**RICO**"), the

*Florida Consumer Collection Practices Act*, Section 559.55, Fla. Stat., *et seq.* ("**FCCPA**"), and Florida's *Civil Remedies for Criminal Practices Act* ("**CRCPA**"), Section 772.101, Fla. Stat., *et seq.*

2.     The Defendants are part of an illegal lending enterprise that seeks to avoid state usury laws through a "Rent-A-Tribe" model.  The Defendants operate and control the lending websites cometloans.com ("**Comet Loans**"), firstloan.com ("**First Loan**"), inboxloan.com ("**Inbox Loan**"), inboxcredit.com ("**Inbox Credit**"), and betterdayloans.com ("**Better Day Loans**") (collectively the "**Lending Websites**"). Each of the Lending Websites, until recently, offered online loans to consumers in Florida.

3.     Loans issued through the Lending Websites charged interest exceeding 700% annually – rates which are illegal in most states, including Florida. Indeed, Florida law prohibits usury and caps interest rates at 18% annually.[1] Interest rates of 45% and higher are deemed a felony. *See* Section 687.071(3), Florida Statutes.  Loans made at usurious rates are void *ab initio* under Florida law.

4.     Chao, through ARB and his related entities, generally collects these loans; however, they assign certain delinquent debts for collection to Apex Processing and Valley Processing, supposedly "third-party" debt collectors.

---

[1] Certain exceptions permit interest up to 30% annually; however, such exceptions are inapplicable to the present matter. *See, e.g.,* Fla. Stat. § 516.031.

5.     Apex Processing and Valley Processing then send official-appearing, but fake, letters to the consumer's employer, falsely claiming that the employer is required to garnish the consumer's wages and remit payment to Apex Processing or Valley Processing for repayment of the consumer's loan.

6.     These *faux* "wage assignment" letters – which look similar to legitimate wage garnishment notices – are prohibited by Florida law but frequently cause money to be withheld from the consumer's paycheck as payment for debts which were unlawful at origin.

## JURISDICTION AND VENUE

7.     Subject matter jurisdiction for Plaintiff's federal claims arises under the FDCPA, 15 U.S.C. § 1692k(d), RICO, 18 U.S.C. § 1965, and 28 U.S.C. § 1331.

8.     This Court has supplemental jurisdiction for Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.     This Court may also exercise diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2).

10.     Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this cause of action occurred within Florida, including in this District and Division.

## PARTIES

### Mr. Guevara

11.      **Mr. Guevara** is a natural person residing in the City of Tampa, Hillsborough County, Florida, and a *Consumer* as defined by the FDCPA and the FCCPA, 15 U.S.C. § 1692a(3) and Section 559.55(8), Florida Statutes, respectively.

### Chao

12.      **Chao** is a natural person and the owner and manager of ARB and its chief executive.

13.      Chao resides at **10443 Los Feliz Dr., Orlando, FL 32836.**

### ARB

14.      **ARB** is a Delaware limited liability company with a principal address of 4700 Millenia Blvd., Suite 270, Orlando, FL 32839.

15.      ARB is registered to conduct business in Florida, where its registered agent is **Robert Lopez, 4700 Millenia Blvd., Suite 270, Orlando, FL 32839.**

16.      Chao and ARB are *Debt Collectors* as defined by the FDCPA, since they are original creditors who, in the process of collecting their own debts, use names other than their own – Valley Processing and Apex Processing – to imply that a third person is attempting to collect such debts.

## FACTUAL ALLEGATIONS

### Chao's Rent-A-Tribe Payday Loan Syndicate

17.     Through ARB, Chao owns and controls each of the Lending Websites.

18.     These websites purport to be owned and operated by tiny, remote, economically impoverished Native American tribes.

19.     For example, First Loan is purportedly owned and operated by the Elem Indian Colony of Pomo Indians (the "**Elem Tribe**").

20.     The Elem Tribe – also known as the Elem Band of Pomo and Sulfur Bank Band of Pomo Indians – is a group of Pomo Indians based on 50 acres near Clearlake Oaks, California. The Elem Tribe has marginal economic activities due to its small size, remote location, and lack of natural resources.

21.     Despite claims that the Elem Tribe owns First Loan, the true beneficial owners are Chao, his companies, and his non-tribal investors.

22.     Chao takes advantage of the Elem Tribe's desperation by offering them minimal payments in exchange for their claim of ownership of his illegal payday lending operations, enabling Chao to assert that the loans are being made by the tribe itself.

23.     However, Chao, his companies, and his non-tribal investors – and not the Elem Tribe – manage, underwrite, collect, and profit from the lending operation.

24.     Indeed, on information and belief, the Elem Tribe receives somewhere between 1 and 2 percent of loan revenues for pretending to be the owner of the website and, more importantly, providing a veil of sovereign immunity.

25.     Such arrangements with native American tribes are known as *rent-a-tribe schemes*.

26.     Through such schemes, non-tribal payday lenders attempt to avoid the restrictions of state and federal laws which would otherwise prohibit usurious loans. They do this by issuing loans in the name of a Native American tribal business entity that purports to be shielded from state and federal law via tribal sovereign immunity.

27.     However, the tribal lending entity is a mere front for an illegal lending scheme; all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the Native American tribe.

28.     The notion that First Loan is actually owned by the Elem Tribe is even more dubious when considering the fact that, in the recent past, First Loan claimed to be owned by a different, unrelated Indian tribe, the Kashia Band of Pomo Indians of the Stewarts Point Rancheria (the "**Kashia Tribe**").

29.     Not coincidentally, the Kashia Tribe was also the most recent "owner" of Inbox Loans and Better Day Loans.

30.     Prior to the Kashia Tribe claiming ownership of Inbox Loans, the website was supposedly owned by the Fort Belknap Indian Tribe of Montana - an unrelated Indian tribe.

31.     Chao owns a significant number of other entities related to allegedly tribal online lending as well, including Sabre Analysis, LLC ("**Sabre**"), whose listed address is identical to ARB's – 4700 Millenia Blvd., Suite 270, Orlando, FL 32839.

32.     Sabre's website claims it is a "portfolio servicing company specializing" in "Data Analytics, Lead Purchase Strategy, Collections Strategies (and) Reporting."

33.     Chao also owns ARB Call Facilities, which provides call center services for the Lending Websites, with call centers in Costa Rica, the Philippines, Egypt and other locations.

## The Lending Websites Share One Server

34.     Domain name registration records show that CometLoan.com had an IP address of 52.43.81.11, which resolved to a server hosted by Amazon.com in Oregon (the "**Server**").

35.     The Server hosted 10 websites, each of which is owned by Chao, including, InboxLoan.com, ARBCalls.com, ARBCares.com, Firstloan.com, and BetterDayLoans.com. **SEE PLAINTIFF'S EXHIBIT A.**

36.     Domain registration records from June 16, 2014, show that Inbox Loan's website, www.inboxloans.com – one of the websites sharing an IP Address with Cometloans.com – listed "Stanley Chao" as the registrant's name, with an email address of "stanley@arb-co.com" as the administrative, technical and registrant contacts. **SEE PLAINTIFF'S EXHIBIT B.**

37.     Credit inquiries from Inbox Loans to Trans Union, a nationwide credit reporting agency, show the address "50 Tice Blvd., Suite 160, Woodcliff Lake, New Jersey 07677." **SEE PLAINTIFF'S EXHIBIT C.**

38.     The address "50 Tice Blvd., Suite 160, Woodcliff Lake, New Jersey 07677" is the registered address of Inbox Auto, LLC, whose only officer is Stanley Chao.

39.     Thus, at all times relevant, Chao and his various companies owned and controlled each of the Lending Websites, as they registered the lending websites, obtained consumer credit reports to evaluate potential borrowers, serviced and collected the loans, and on information and belief, received the vast majority of the profits from the loans.

## Usurious Lending Prohibited in Florida

40.     The State of Florida has long recognized that lending money at usurious interest rates is immoral, harmful, and contrary to public policy.

41.     Section 687.071(3), Florida Statutes, renders loans made with annual interest rates greater than 45% a third-degree felony.

42.     Section 687.071(7), Florida Statutes, states: "No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state."

43.     Any person who willfully makes such a loan forfeits the right to collect payment for the loan, as such loans are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

### Defendants Make Usurious Loan to Mr. Guevara and Attempt Collection

44.     In October 2019, Comet Loans issued a $500 loan to Mr. Guevara (the "**Loan**").

45.     Comet Loans charged an interest rate exceeding 700% annually on the Loan.

46.     Two weeks after the Effective Date, Comet Loans began initiating ACH withdrawals from Mr. Guevara's checking account, including a $307.05 withdrawal on November 8, 2019, and a $307.05 withdrawal on November 22, 2019.

47.     Mr. Guevara repaid *at least* **$614.10** within a month of obtaining the Loan from Comet Loans.

48.     However, despite repaying more than the entire loan balance, Comet Loans claimed he owed over $1,500 *more* (the "**Debt**").

49.     Agents for Chao, under the direction and authority of Chao and ARB, attempted to collect the Debt via emails to Mr. Guevara.

50.     However, due to its 700%-plus interest rate, the Loan was void *ab initio*, rendering the Debt unenforceable against Mr. Guevara.

51.     The Debt therefore constitutes an *Unlawful Debt* as defined by Fla. Stat. § 772.102(2) and 18 U.S.C. § 1961(6).

52.     Mr. Guevara utilized the proceeds from the Loan for personal purchases.

53.     The Debt thus meets the definitions of *Debt* prescribed by the FCCPA, Fla. Stat. § 559.55(6), and the FDCPA, 15 U.S.C. § 1692a(5).

54.     In 2021, Chao and ARB amicably resolved a lawsuit brought by Mr. Guevara for their issuance and collection of Mr. Guevara's Loan.

55.     Chao and ARB thus knew that Mr. Guevara was represented by an attorney with respect to this particular Debt.

56.     Despite this, on August 19, 2021, Chao and ARB mailed a ***Wage Assignment Demand Notice*** to Mr. Guevara's employer, Avalon Heights. **SEE PLAINTIFF'S EXHIBIT D.**

57.     The Wage Assignment Demand Notice was a communication which stated the balance of the Debt – $1,506.19 – and sought payment.

58.     The Wage Assignment Demand Notice was thus an attempt to collect the Debt.

59. The Wage Assignment Demand Notice was sent from Apex Servicing, as "servicer" for Comet Loans.

60. However, Apex Servicing, as well as Valley Servicing, are owned and operated by Chao and ARB.

61. Indeed, the Wage Assignment Demand Notice was sent pursuant to policies put in place by Chao and ARB, at their direction.

62. The Wage Assignment Demand Notice falsely represented that Mr. Guevara owed $1,506.19 to Comet Loan, when such a balance was unenforceable against Mr. Guevara.

63. The Wage Assignment Demand demanded that Avalon Heights withhold 15% of Mr. Guevara's pay and send it to Comet Loans, PO Box 668, Blanding, UT 84511.

64. In sending the Wage Assignment Demand Notice, Chao and ARB, acting as Apex Servicing, falsely represented that they had the legal right to garnish, or assign a portion of Mr. Guevara's wages.

65. Voluntary wage assignments on a consumer loan are not legal in Florida. Fla. Stat. § 516.17 (2021).

66. Despite this, on September 24, 2021, Mr. Guevara's employer withheld $249.00 from his wages.

67. Mr. Guevara became extremely upset and emotionally distraught upon learning that his income – already stretched thin – had been reduced further.

68.     Further, Chao and ARB, through their alter-ego, Apex Processing, disclosed derogatory, legally-protected information about Mr. Guevara's purported Debt to his employer – a debt he did not, in fact, legally owe – without Mr. Guevara's authorization or consent.

69.     Mr. Guevara, upon seeing that his employer intended to withhold $249.00 from his wages to pay a loan which he believed had previously been resolved, immediately contacted his employer, as well as the undersigned law office.

70.     Avalon Heights thereafter cancelled the pending garnishment and did not remit payment to Apex Processing.

## Chao's Prior Use of 'Wage Garnishment' Documents

71.     On November 18, 2019, the Washington State Department of Financial Institutions issued a consumer alert stating: "an entity using the name Apex Servicing has sent letters to employers in Washington attempting to garnish wages from employee paychecks for alleged loans owed to Inbox Loan and First Loan." *See* https://dfi.wa.gov/consumer/alerts/apex-servicing-unlicensed-debt-collection.

72.     Washington's State Department's alert stated that letters labelled as "Wage Assignment Demand Notice" were sent to employers, alleging that employees had signed a Wage Assignment and authorized Kashia d/b/a Inbox Loan and/or First Loan to collect wages from the employer to repay the loan. *Id.*

73.    This alert warned consumers that Apex Servicing is not a licensed collection agency in Washington and that Inbox Loan and First Loan are not licensed to conduct business in the State. *Id.*

74.    Neither Apex Servicing, nor First Loan, are licensed as consumer collection agencies in Florida.

75.    Chao and ARB know that the collection of their loans, through Wage Assignment Demand Notices issued by Apex Servicing, violates Florida law, and have been sued previously for such conduct. See, e.g., *Venisha Beckford vs. Elem Indian Colony of Pomo Indians, Hiram Campbell, Sarah Brown Garcia, ARB Risk Management Holdings, LLC and Stanley Chao,* Case Number 8:20-cv-02103 (September 9, 2020, M.D. Fla.).

76.    Apex Servicing's website lists its physical address as 333 South Main Street, Blanding, Utah 84511. **SEE PLAINTIFF'S EXHIBIT E.**

77.    However, no business called "Apex Servicing" exists at this location. The 333 South Main Street address is an arts-and-crafts store selling pottery and other souvenirs, with no discernible relationship to debt collection, wage assignment, payday lending, or similar.

78.    The "Wage Assignment Demand Notices" that "Apex Servicing" mailed to employers contain a PO Box address – PO Box 668, Blanding, UT 84511.

79.    Chao and ARB also have a second, doppelgänger alter-ego named Valley Servicing (www.valleyservicing.com) which engages in the identical behaviors.

80.    The websites of Valley Servicing and Apex Servicing are virtual carbon-copies of each other, other than the name of the business, address and phone number.

81.    Valley Servicing sends out "Wage Assignment Demand Notices" to the employers of consumers which are identical in formatting and verbiage to those sent by Apex Servicing. An example of a notice sent by Valley Servicing is attached as **PLAINTIFF'S EXHIBIT F.**

82.    Like Apex Servicing, Valley Servicing is run by Chao and ARB to make it appear to consumers that a third party is involved in the collection of their illegal loans.

83.    Mr. Guevara has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## CLASS ACTION ALLEGATIONS

### The FDCPA Class

84.    Plaintiff adopts and incorporate paragraphs 1 – 83 as if fully restated herein.

85.    Plaintiff brings this action on behalf of himself and all others similarly situated. All allegations herein are based on information and belief, except for

those allegations that pertain to Plaintiff. Plaintiff's information and belief are based on, *inter alia*, the investigation conducted to date by Plaintiff and his counsel. Each allegation in this consumer complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

86.     Pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), Plaintiff brings this action for himself and on behalf of the following classes of which he is a member, initially defined as**:**

> **All consumers: (1) located in Florida; and (2) whose employer, within one year of the date of the filing of this complaint, received a "Wage Assignment Demand Notice" or similar, from Valley Servicing or Apex Servicing, regarding a loan issued by Comet Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans (the "<u>FDCPA Class</u>").**

87.     Excluded from the FDCPA Class are the Defendants and any of their officers, directors, and employees.

88.     Plaintiff reserves the right to modify or amend the FDCPA Class definition before the Court determines whether certification is appropriate.

89.     **Numerosity.   Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical.  Comet Loans, Inbox Loans, Inbox Credit, First Loan, and Better Day Loan were all heavily marketed in Florida and made a considerable number of loans to Florida consumers. Class members are therefore spread throughout the state of Florida. Although the precise number

of Class members is unknown, on information and belief, there are at least 1,000 members, the names and addresses of whom are identifiable through documents and business records maintained by the Defendants. The class members may be notified of the pendency of this action by published or mailed notice.

90. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** There are questions of law and fact that are common to the FDCPA Class which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation: (a) whether the Defendants are *Debt Collectors* as defined by the FDCPA; (b) whether the Class members' alleged debts constitute consumer debts; (c) whether the Defendants violated §§ 1692e and 1692f of the FDCPA by attempting to collect debts which were unenforceable and by sending a "Wage Assignment Demand Notice" to the Class members' employers; and, (d) whether Plaintiff and the class members were harmed by the Defendants.

91. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. All of the lending businesses owned by Chao and ARB made loans to Florida consumers at rates vastly exceeding the maximum lawful rate. Chao and ARB then utilized two virtually identical alter-egos - Apex Servicing and Valley Servicing - in an attempt to unlawfully garnish the wages of these same Florida consumers, via wage assignment notices sent directly to their

employers. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that he seeks for members of the Class.

92. **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the FDCPA Class and will fairly and properly protect the interests of the FDCPA Class. Plaintiff has retained experienced counsel who have litigated well over one thousand consumer cases under consumer protection statutes, including RICO and the FDCPA. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the FDCPA Class.

93. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the FDCPA Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of RICO, the CRCPA, the FCCPA and the FDCPA. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts.

Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendants' conduct.

94. **Injunctive Relief Appropriate for the Defendants, Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have and continue to act on grounds generally applicable to the class, making appropriate injunctive relief with respect to Mr. Guevara and the class members. Mr. Guevara and the putative class seek an injunction prohibiting the Defendants from continued collection of these illegal loans and ordering the dissolution of each corporate Defendant that has engaged in any enterprise pled herein.

## The FCCPA Class

95. Plaintiff adopts and incorporate paragraphs 1 – 83 as if fully restated herein.

96. Plaintiff brings this action on behalf of himself and all others similarly situated. All allegations herein are based on information and belief, except for those allegations that pertain to Plaintiff. Plaintiff's information and belief are based on, *inter alia*, the investigation conducted to date by Plaintiff and his counsel. Each allegation in this consumer complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

97.     Pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), Plaintiff brings this action for himself and on behalf of the following classes of which he is a member, initially defined as:

**All consumers: (1) located in Florida; and (2) whose employer, within two years of the date of the filing of this complaint, received a "Wage Assignment Demand Notice" or similar, from Valley Servicing or Apex Servicing, regarding a loan issued by Comet Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans (the "FCCPA Class").**

98.     Excluded from the FCCPA Class are the Defendants and any of their officers, directors, and employees.

99.     Plaintiff reserves the right to modify or amend the FCCPA Class definition before the Court determines whether certification is appropriate.

100.    **Numerosity.   Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical.  Comet Loans, Inbox Loans, Inbox Credit, First Loan, and Better Day Loan were all heavily marketed in Florida and made a considerable number of loans to Florida consumers. Class members are therefore spread throughout the state of Florida. Although the precise number of Class members is unknown, on information and belief, there are at least 1,000 members, the names and addresses of whom are identifiable through documents and business records maintained by the Defendants.  The class members may be notified of the pendency of this action by published or mailed notice.

101.    **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).**  There are questions of law and fact that are common to the FCCPA Class which predominate over questions affecting any individual class member.  Specifically, these common questions include, without limitation: (a) whether the Class members' alleged debts constitute a *Consumer Debt*; (b) whether the Defendants violated § 559.72(9) of the FCCPA by attempting to collect debts which were unenforceable and by sending a "Wage Assignment Demand Notice" to the Class members' employers; and, (c) whether Plaintiff and the class members were harmed by the Defendants.

102.    **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. All of the lending businesses owned by Chao and ARB made loans to Florida consumers at rates vastly exceeding the maximum lawful rate. Chao and ARB then utilized two virtually identical alter-egos - Apex Servicing and Valley Servicing - in an attempt to unlawfully garnish the wages of these Florida consumers, via wage assignment notices sent directly to their employers.  Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that he seeks for members of the Class.

103.    **Adequacy of Class Representation.  Fed. R. Civ. P. 23(a)(4).**  Plaintiff is an adequate representative of the FCCPA Class and will fairly and properly

protect the interests of the FCCPA Class. Plaintiff has retained experienced counsel who have litigated well over one thousand consumer cases under consumer protection statutes, including RICO and the FDCPA. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the FCCPA Class.

104. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the FCCPA Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of RICO, the CRCPA, the FCCPA and the FDCPA. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendants' conduct.

105. **Injunctive Relief Appropriate for the Defendants, Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have and continue to act on grounds generally applicable to the class, making appropriate injunctive relief with respect to Mr. Guevara and the class members. Mr. Guevara and the putative class seek an injunction prohibiting the Defendants from continued collection of these illegal loans and ordering the dissolution of each corporate Defendant that has engaged in any enterprise pled herein.

### The CRCPA Class

106. Plaintiff adopts and incorporate paragraphs 1 – 83 as if fully restated herein.

107. Plaintiff brings this action on behalf of himself and all others similarly situated. All allegations herein are based on information and belief, except for those allegations that pertain to Plaintiff. Plaintiff's information and belief are based on, *inter alia*, the investigation conducted to date by Plaintiff and his counsel. Each allegation in this consumer complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

108. Pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), Plaintiff brings this action for himself and on behalf of the following classes of which he is a member, initially defined as**:**

**All consumers: (1) located in Florida; (2) whose employer, within five years of the date of the filing of this complaint, received a "Wage Assignment Demand Notice" or similar, from Valley Servicing or Apex Servicing, regarding a loan issued by Comet Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans (the "CRCPA Class").**

109.     Excluded from the CRCPA Class are the Defendants and any of their officers, directors, and employees.

110.     Plaintiff reserves the right to modify or amend the CRCPA Class definition before the Court determines whether certification is appropriate.

111.     **Numerosity.   Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical.  Comet Loans, Inbox Loans, Inbox Credit, First Loan, and Better Day Loan were all heavily marketed in Florida and made a considerable number of loans to Florida consumers. Class members are therefore spread throughout the state of Florida. Although the precise number of Class members is unknown, on information and belief, there are at least 1,000 members, the names and addresses of whom are identifiable through documents and business records maintained by the Defendants.  The class members may be notified of the pendency of this action by published or mailed notice.

112.     **Existence and Predominance of Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  There are questions of law and fact that are common to the CRCPA Class which predominate over questions affecting any individual class member.  Specifically, these common questions include, without limitation:

(a) whether the Defendants and associated persons constitute an *Enterprise* as defined by Fla. Stat. § 772.102(3); (b) whether loans made to members of the class by Comet Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans amount to an *Unlawful Debt* as defined by Fla. Stat. §772.102(2)(a)(3); (c) whether the Defendants received income derived from the collection of an unlawful debt; (d) whether the Defendants used or invested the part of that income to acquire an interest in, to establish, or to operate the enterprise; and, (e) whether Plaintiff and the class members were harmed by the Defendants.

113. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. All of the lending businesses owned by Chao and ARB made loans to Florida consumers at rates vastly exceeding the maximum lawful rate. Chao and ARB then utilized two virtually identical alter-egos - Apex Servicing and Valley Servicing - in an attempt to unlawfully garnish the wages of these Florida consumers, via wage assignment notices sent directly to their employers. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that he seeks for members of the Class.

114. **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the CRCPA Class and will fairly and properly protect the interests of the CRCPA Class. Plaintiff has retained experienced

counsel who have litigated well over one thousand consumer cases under consumer protection statutes, including RICO and the FDCPA. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the CRCPA Class.

115. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the CRCPA Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of RICO, the CRCPA, the FCCPA and the FDCPA. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendants' conduct.

116. **Injunctive Relief Appropriate for the Defendants, Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have and

continue to act on grounds generally applicable to the class, making appropriate injunctive relief with respect to Mr. Guevara and the class members. Mr. Guevara and the putative class seek an injunction prohibiting the Defendants from continued collection of these illegal loans and ordering the dissolution of each corporate Defendant that has engaged in any enterprise pled herein.

## The RICO Class

117.    Plaintiff adopts and incorporate paragraphs 1 – 83 as if fully restated herein.

118.    Plaintiff brings this action on behalf of himself and all others similarly situated. All allegations herein are based on information and belief, except for those allegations that pertain to Plaintiff. Plaintiff's information and belief are based on, *inter alia*, the investigation conducted to date by Plaintiff and his counsel. Each allegation in this consumer complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

119.    Pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), Plaintiff brings this action for himself and on behalf of the following classes of which he is a member, initially defined as**:**

> **All consumers: (1) located in Florida; (2) whose employer, within four years of the date of the filing of this complaint, received a "Wage Assignment Demand Notice" or similar, from Valley Servicing or Apex Servicing, regarding a loan issued by Comet**

**Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans (the "RICO Class").**

120.    Excluded from the RICO Class are the Defendants and any of their officers, directors, and employees.

121.    Plaintiff reserves the right to modify or amend the RICO Class definition before the Court determines whether certification is appropriate.

122.    **Numerosity.  Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical.  Comet Loans, Inbox Loans, Inbox Credit, First Loan, and Better Day Loan were all heavily marketed in Florida and made a considerable number of loans to Florida consumers. Class members are therefore spread throughout the state of Florida. Although the precise number of Class members is unknown, on information and belief, there are at least 1,000 members, the names and addresses of whom are identifiable through documents and business records maintained by the Defendants.  The class members may be notified of the pendency of this action by published or mailed notice.

123.    **Existence and Predominance of Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  There are questions of law and fact that are common to the RICO Class which predominate over questions affecting any individual class member.  Specifically, these common questions include, without limitation: (a) whether the Defendants and associated persons constitute an *Enterprise* as defined by 18 U.S.C. § 1961(4); (b) whether the activities of the Defendants or the

enterprise affected interstate commerce; (c) whether loans made to members of the class by Comet Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans amount to unlawful debts as defined by 18 U.S.C. § 1961(6); (d) whether the Defendants received income derived from the collection of such unlawful debts; (e) whether the Defendants used or invested part of that income to acquire an interest in, to establish, or to operate the enterprise; and, (f) whether Plaintiff and the class members were harmed by the Defendants.

124. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. All of the lending businesses owned by Chao and ARB made loans to Florida consumers at rates vastly exceeding the maximum lawful rate. Chao and ARB then utilized two virtually identical alter-egos - Apex Servicing and Valley Servicing - in an attempt to unlawfully garnish the wages of these Florida consumers, via wage assignment notices sent directly to their employers. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that he seeks for members of the Class.

125. **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the RICO Class and will fairly and properly protect the interests of the RICO Class. Plaintiff has retained experienced counsel who have litigated well over one thousand consumer cases under consumer

protection statutes, including RICO and the FDCPA. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the RICO Class.

126. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the RICO Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of RICO, the CRCPA, the FCCPA and the FDCPA. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendants' conduct.

127. **Injunctive Relief Appropriate for the Defendants, Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have and continue to act on grounds generally applicable to the class, making appropriate

injucctive relief with respect to Mr. Guevara and the class members. Mr. Guevara and the putative class seek an injunction prohibiting the Defendants from continued collection of these illegal loans and ordering the dissolution of each corporate Defendant that has engaged in any enterprise pled herein.

**COUNT I**
**VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e**
**(Class Claim on behalf of the FDCPA Class)**

128.    Plaintiff adopts and incorporate paragraphs 1 – 83 as if fully restated herein.

129.    The loans issued by the Defendants, through Comet Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans, to Mr. Guevara and the Class each charged an interest rate far in excess of the permissible rate under Florida law and, thus, the loans are unenforceable.

130.    The Defendants violated § 1692e of the FDCPA by using false and deceptive representations in connection with the collection of a debt, by indicating to Mr. Guevara and the Class that they owed amounts that they did not owe, deceptively labeling the debts as though they were legal, valid, and enforceable when they were not, and by falsely representing that they could collect such loans through a "Wage Assignment Demand Notice."

131.    Class members suffered actual damages in the form of payments withheld from their paycheck, damage to their reputation, and severe emotional distress as a result of the Defendants' violations of § 1692e.

132.    Accordingly, the Defendants are liable to Mr. Guevara and each putative Class member for their actual damages, statutory damages of up to $1,000.00, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT II
### VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f
### (Class Claim on behalf of the FDCPA Class)

133.    Plaintiff adopts and incorporate paragraphs 1 – 83 as if fully restated herein.

134.    The loans issued by the Defendants, through Comet Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans, to Mr. Guevara and the Class each charged an interest rate far in excess of the permissible rate under Florida law and, thus, the loans are unenforceable.

135.    The Defendants violated § 1692f of the FDCPA by attempting to collect amounts which were not permitted by law. Specifically, the Defendants attempted to collect loans issued by Comet Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans which were unenforceable and illegal due to the application of interest rates well in excess of applicable state law, through use of a "Wage Assignment Demand Notice."

136.    Class members suffered actual damages in the form of payments withheld from their paycheck, damage to their reputation, and severe emotional distress as a result of the Defendants' violations of § 1692f.

137.   Accordingly, the Defendants are liable to Mr. Guevara and each putative Class member for their actual damages, statutory damages of up to $1,000.00, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT III
### VIOLATIONS OF THE FDCPA - 15 U.S.C. § 1692c(b)
#### (Class Claim on behalf of the FDCPA Class)

138.   Plaintiff adopts and incorporate paragraphs 1 – 83 as if fully restated herein.

139.   The Defendants violated § 1692c(b) of the FDCPA when they communicated with Mr. Guevara's, and each Class member's, employer, through use of a "Wage Assignment Demand Notice," in connection with the collection of a debt, without consent.

140.   Class members suffered actual damages in the form of payments withheld from their paycheck, damage to their reputation, and severe emotional distress as a result of the Defendants' violations of § 1692c.

141.   Accordingly, the Defendants are liable to Mr. Guevara and each putative Class member for their actual damages, statutory damages of up to $1,000.00, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT IV
## VIOLATIONS OF THE FCCPA, FLA. STAT. § 559.72(9)
### (Class Claim on behalf of the FCCPA Class)

142.    Plaintiff adopts and incorporate paragraphs 1 – 83 as if fully restated herein.

143.    The loans issued by Comet Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans to Plaintiff and the Class each charged an interest rate far in excess of the permissible rate under Florida law and, thus, the loans are unenforceable in Florida.

144.    The Defendants violated § 559.72(9) of the FCCPA by attempting to enforce the loans issued by Comet Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans via "Wage Assignment Demand Notices" sent to Plaintiff's and the Class members' employers, therein asserting the legal right to collect the loans and to do so via wage assignment, when no such legal right exists in Florida.

145.    The Defendants' actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Plaintiffs and the Class, and profiting from it.

146.    The Defendants knew of the illegal nature of the loans and the illegality of their wage assignment notices, as the Defendants have had multiple prior lawsuits filed against them for substantially similar collection attempts.

147. The Class has suffered actual damages in the form of payments withheld from their paycheck, damage to their reputation, and severe emotional distress as a result of the Defendants' violations of Fla. Stat. § 559.72(9).

148. Accordingly, the Defendants are jointly and severally liable to Plaintiff and each putative Class member for their actual damages, statutory damages of up to $1,000.00, punitive damages, costs, and attorney's fees pursuant to Fla. Stat. § 559.77.

## COUNT V
### VIOLATIONS OF THE FCCPA, FLA. STAT. § 559.72(4)
### (Class Claim on behalf of the FCCPA Class)

149. Plaintiff adopts and incorporate paragraphs 1 – 83 as if fully restated herein.

150. The Defendants violated § 559.72(4) of the FCCPA when they communicated, without consent, with Plaintiff's employer, and each Class members' employer, in connection with collection of a loan issued by Comet Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans, without first obtaining a judgment from a Florida court, or court of any other state, for such loan.

151. The Defendants knew that communicating directly with the Class members' employers, without prior consent, for purposes of collection, was illegal.

152.   The Defendants' actions were thus willful, intentional, and done for the express purpose of collecting unenforceable debts from Plaintiffs and Class members, and profiting from it.

153.   The Class has suffered actual damages in the form of amounts withheld from their paycheck, damage to their reputation, and severe emotional distress as a result of the Defendants' violations of Fla. Stat. § 559.72(4).

154.   Accordingly, the Defendants are jointly and severally liable to Plaintiff and each putative Class member for their actual damages, statutory damages of up to $1,000.00, punitive damages, costs, and attorney's fees pursuant to Fla. Stat. § 559.77.

## COUNT VI
## VIOLATIONS OF THE CRCPA, FLA. STAT. § 772.103(4)
### (Class Claim on behalf of the CRCPA Class)

155.   Plaintiff adopts and incorporate paragraphs 1 – 83 as if fully restated herein.

156.   The loans issued by the Defendants, through Comet Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans, to Mr. Guevara and the Class, each charged an interest rate far in excess of the permissible rate under Florida law and, thus, the loans are unenforceable and constitute *Unlawful Debt* under the CRCPA, Fla. Stat. § 772.102(2)(a)(3).

157.   The Defendants violated § 772.103(4) of the CRCPA by conspiring with each other, and other persons, including the Elem and Kashia Tribes, to issue

and collect unlawful debts issued by Comet Loans, Inbox Loans, Inbox Credit, First Loan, and Better Day Loans, through use of a "Wage Assignment Demand Notice."

158. The Defendants agreed to participate in the CRCPA conspiracy and agreed to the overall objective of the conspiracy – to collect unlawful loans through use of a "Wage Assignment Demand Notice" – as evidenced by their issuance of a "Wage Assignment Demand Notice" to Mr. Guevara's and the putative class members' employers.

159. The Class has suffered economic damages in the form of amounts withheld from their paycheck in response to the "Wage Assignment Demand Notice."

160. Accordingly, the Defendants are jointly and severally liable to Mr. Guevara and the putative class members for treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

## COUNT VII
## VIOLATIONS OF RICO, 18 U.S.C. § 1962(d)
**(Class Claim on behalf of the RICO Class)**

161. Plaintiff adopts and incorporate paragraphs 1 – 83 as if fully restated herein.

162. The loans issued by the Defendants, through Comet Loans, Inbox Loans, Inbox Credit, First Loan, or Better Day Loans, to Mr. Guevara and the Class, each charged an interest rate far in excess of the permissible rate under Florida law

and, thus, the loans are unenforceable and constitute *Unlawful Debt* under RICO, 18 U.S.C. § 1961(6).

163. The Defendants violated § 1962(d) of RICO by conspiring with each other, and other persons, including the Elem and Kashia Tribes, to issue and collect unlawful debts issued by Comet Loans, Inbox Loans, Inbox Credit, First Loan, and Better Day Loans, through use of a "Wage Assignment Demand Notice."

164. The Defendants agreed to participate in the RICO conspiracy and agreed to the overall objective of the conspiracy – to collect unlawful loans through use of a "Wage Assignment Demand Notice" – as evidenced by their issuance of a "Wage Assignment Demand Notice" to Mr. Guevara's and the putative class members' employers.

165. The Class has suffered economic damages in the form of amounts withheld from their paycheck in response to the "Wage Assignment Demand Notice."

166. Accordingly, the Defendants are jointly and severally liable to Mr. Guevara and the putative class members for treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that the Court enter judgment on behalf of

themselves and the classes they seek to represent against Defendants for:

a.   Certification for this matter to proceed as a class action;

b.   An award of actual, treble, punitive, and statutory damages as pled
     herein;

c.   Injunctive relief as pled herein;

d.   An award of pre-judgment and post-judgment interest as provided
     by law;

e.   An award of attorneys' fees, litigation expenses, and costs of suit;

f.   Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Guevara hereby demands a jury trial on all issues so triable.

Respectfully submitted on **March 8, 2022,** by:

**SERAPH LEGAL, P. A.**

/s/ *Brandon D. Morgan*

Brandon D. Morgan, Esq. (FBN: 1015954)
Bryan J. Geiger, Esq. (FBN: 119168)
Thomas M. Bonan, Esq. (FBN: 118103)
Bridget L. Scarangella (FBN: 1022866)
1614 N. 19th St.
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
BGeiger@SeraphLegal.com
BMorgan@SeraphLegal.com
TBonan@SeraphLegal.com
BScarangella@SeraphLegal.com
*Attorneys for Plaintiff*

## <u>ATTACHED EXHIBIT LIST</u>

A       IP Address Location for Cometloans.com

B       Domain Registration Records for InboxLoan.com, Record Date: June 16, 2014

C       Unrelated Consumer's Trans Union Disclosure Including Inbox Loan Inquiry

D       Wage Assignment Demand Sent to Mr. Guevara's Employer

E       Apex Servicing Website, Accessed January 13, 2022

F       Valley Servicing Wage Assignment Demand Notice